<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NICHOLAS PAPPAS, : | |
| : | Civil Action No. 10-3327(NLH) |
| Plaintiff, : | |
| : | |
| v. : | **OPINION** |
| : | |
| LEONARD ZACAMY, et al., : | |
| : | |
| Defendants. : | |

APPEARANCES:

Andrew W. Cole, Esq.
516 South 44th Street
Philadelphia, PA  19104
    Counsel for Plaintiff

Dean R. Wittman, Esq.
Zeller & Wieliczko LLP
120 Haddontowne Court
Cherry Hill, NJ  08034
    Counsel for Defendants Leonard Zacamy and Haddon Township

HILLMAN, District Judge

    This matter is presently before the Court pursuant to the submission of a Motion [89] for summary judgment by the only remaining Defendants, Haddon Township and Leonard Zacamy.

    For the reasons stated below, the Motion will be granted in part and denied in part.

I.   <u>BACKGROUND</u>

    This matter was originally opened to the Court by Plaintiff Nicholas Pappas's submission of a Complaint [1] asserting

various civil rights claims arising out of his arrest on July 15, 2008.  Briefly, Plaintiff asserted that at the end of a short car pursuit by police, he lost control of the car he was driving and hit a van and then a bus.  Plaintiff alleged that he could not exit the vehicle through the driver's side door, so he climbed out the sun-roof of the vehicle.  Plaintiff further asserts that as soon as he was out of the vehicle and on the ground, he immediately complied with the order from Officer Leonard Zacamy to raise his hands in the air.  According to Plaintiff, he was standing immediately in front of the bus at that time.  He contends that Officer Zacamy then came up behind him, choked him, punched him, and slammed him into the concrete, even though he did not resist Officer Zacamy in any way.  Plaintiff contends that Officer Zacamy punched him in the face repeatedly and continued to beat him even after he was cuffed.  Plaintiff stated that he never ran from the site or resisted arrest in any way.

Plaintiff asserted claims for excessive use of force in arrest under the Fourth Amendment, cruel and unusual punishment under the Eighth Amendment and for due process violations under the Fifth and Fourteenth Amendment.  Plaintiff named as Defendants Officer Zacamy of the Haddon Township Police Department, Officer George Tagmire of the Haddon Township Police Department, Charles Jackson of the Haddon Township Police

2

Department,[1] Haddon Township,[2] and Officer Robert Kraft of the Gloucester City Police Department.  He sought all appropriate relief.

By Stipulation [88] of the parties, Defendants Robert Kraft, George Tagmire, and Charles Jackson were voluntarily dismissed without prejudice from this action pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure. Discovery has concluded and the remaining defendants, Haddon Township and Officer Zacamy, have filed this pending Motion for Summary Judgment.  Officer Zacamy asserts that he used an objectively reasonable amount of force in arresting Plaintiff and that he is entitled to qualified immunity.  Haddon Township argues that Plaintiff has failed to present evidence of a policy or custom that would subject it to liability for Officer Zacamy's actions.[3]

---

[1] George Tagmire and Charles Jackson were alleged to be Plaintiff's supervisors.

[2] The claim against Haddon Township was originally pled improperly as against the Haddon Township Police Department.

[3] In addition, the Defendants assert that Plaintiff's claims under the Fifth, Eighth, and Fourteenth Amendments fail as a matter of law because any claim based on the amount of force used in connection with an arrest arises solely under the Fourth Amendment proscription against unreasonable searches and seizures.  Plaintiff agrees and has stated that he has no objection to dismissal of those claims.  (Plaintiff's Brief in Opposition at 20, Docket Entry No. 91.)

In support of the Motion for Summary Judgment, Defendants have submitted a Statement of Material Facts Not in Dispute, (Motion, Statement of Material Facts Not in Dispute, Document 89-9), to which Plaintiff has responded, (Plaintiff's Statement in Response to Defendants' Statement of Undisputed Facts, Document No. 91-2). Accordingly, except as specifically noted, the following facts are not in dispute.

On July 15, 2008, between 11:30 a.m. and noon, Plaintiff drove to Camden, New Jersey, where he purchased twelve bags of heroin. As Plaintiff then drove through Haddon Township, he had on his person the twelve bags of heroin and a packet of several syringes. While driving through Haddon Township, Plaintiff observed a marked police vehicle following the vehicle he was driving. The marked police vehicle was being driven by Defendant Officer Leonard Zacamy, who observed Plaintiff's vehicle run a red light and almost hit another vehicle at approximately 2:54 p.m. Officer Zacamy then activated his emergency lights and began to pursue the vehicle driven by Plaintiff.

Initially, Plaintiff did stop his vehicle. However, as Officer Zacamy approached his vehicle on foot, Plaintiff sped away. Officer Zacamy then returned to his vehicle and chased Plaintiff's vehicle again. There is some dispute as to the length of the chase, which may have extended for as much as two

4

miles at speeds up to 40 or 50 miles an hour.  The parties are
in agreement, though, that the vehicle chase lasted no more than
two minutes.  The chase ended when Plaintiff's vehicle struck a
van and then a New Jersey Transit bus.  The parties are not in
agreement as to what transpired next.  They have presented
several deposition transcripts providing different versions of
the incident, as well as other evidence.

Plaintiff stated at deposition that he exited his vehicle
through the T-top, as soon as it came to a stop, because he
didn't know what was going on.  He stated that he went in front
of the bus, a matter of five to ten feet, and that Officer
Zacamy was already there, with his weapon drawn, telling
Plaintiff to "freeze," to put his hands on his head, and to wait
for Officer Zacamy's next command.  Plaintiff stated that he
complied with that order, but that Officer Zacamy came up behind
him, hit him and knocked him to the ground, and began repeatedly
punching him in the face, even after he was handcuffed.
According to Plaintiff, he never attempted to flee the scene.
He has stated that he had some heroin in a cigarette packet in
his pocket and he had a wrapped pack of four empty syringes in
his hand when he exited the vehicle.  When Officer Zacamy told
Plaintiff to "drop everything," Plaintiff threw the pack of
syringes on the ground in front of him.  (Plaintiff's
Opposition, Ex. A, Plaintiff's Deposition at 18-19, 24-36.)

Plaintiff further testified at his deposition that people at the scene were yelling at Officer Zacamy to stop hitting him. However, no witness statements were taken from the driver or passengers on the bus. (Pl. Dep. at 36.) Plaintiff was taken to the hospital where he was subjected to a number of tests and treatments totaling over $34,000 in costs, and was told that he had several broken bones in the right side of his face. In addition, his dentures were broken. He remained in the hospital overnight. Plaintiff testified that his whole face was still bruised and swollen the next day and that he had trouble eating. In addition, Plaintiff testified that he was to be transported to another facility the next day and that the transporting officers insisted that photographs be taken of Plaintiff before transporting him, as they did not want any later suggestion that they were responsible for his injuries. (Pl. Dep. at 37, 42-46.) While incarcerated, Plaintiff received pain medication and was, for an unspecified period of time, placed on a diet of soft food. (Pl. Dep. at 53-55.) At his deposition, Plaintiff testified to continuing injuries in the form of numbness and disfigurement--flatness--of the right side of his face where eleven bones were broken, and a ringing in his ears. He stated that his broken jawbone did not heal properly. He also stated that he sought and received psychiatric treatment as a result of

the incident, including medication to assist him in sleeping.
(Pl. Dep. at 55-60).

Office Zacamy, on the other hand, testified at his
deposition that Plaintiff stayed in his car after it came to a
stop, and that Officer Zacamy exited his vehicle, drew his
weapon, and pointed it at Plaintiff while Plaintiff was still in
his vehicle, telling him to show his hands, and that Plaintiff
ignored Officer's Zacamy's command and climbed out of the T-top
of his vehicle.  Officer Zacamy testified that Plaintiff's face
was bloody when he first exited his vehicle.  Officer Zacamy
further testified that Plaintiff ran away from him to a grassy
area, where Officer Zacamy grabbed his shirt, causing Plaintiff
to fall to the ground.

In addition, Officer Zacamy testified that Plaintiff
continued to resist him, fighting with him and attempting to hit
him, and refusing to give Officer Zacamy his hands.  At some
unknown point, according to Officer Zacamy, Plaintiff discarded
the syringes and some of the drugs on his person, but Officer
Zacamy explained that he was worried that Plaintiff might grab
one of the syringes and that they might be harmful to the
officer.  Officer Zacamy states that he was concerned about his
unsecured weapon, which he had returned to its holster when he
began to chase Plaintiff on foot, but had not snapped in.
Officer Zacamy testified that he was on Plaintiff's back,

attempting to subdue him, and hitting him on the side of the head in an effort to subdue him.  According to Officer Zacamy, he struck only one or two blows, at which time another officer assisted him in cuffing Plaintiff, and no further blows were delivered by any officers on the scene.  (Motion, Ex. D, Dep. of Leonard Zacamy, at 13, 15-23, 51.)  As a result of this incident, Officer Zacamy injured his hand, requiring surgery, and he missed approximately two months of work.  (Dep. of Zacamy at 40-42.)

An Officer Douglas Zeigler, who assisted in cuffing Plaintiff, also gave a deposition, stating that Plaintiff ran about 25 yards to a grassy area before being tackled by Officer Zacamy.  He noticed syringes in the area, but stated that Plaintiff was not attempting to use them as a weapon.  Officer Zeigler testified that Plaintiff was flailing his arms and failing to respond to officer commands to give Officer Zacamy his hands.  Officer Zeigler further stated that he never saw Officer Zacamy hit Plaintiff at all, nor did he notice any injuries to Plaintiff.  Officer Zeigler sprained his thumb in the incident and missed one week of work.  (Motion, Ex. E, Dep. of Zeigler.)

Briefly, Officer Robert Kraft testified that he saw Plaintiff exit his vehicle and run in front of the bus, where Officer Zacamy subdued him.  Officer Kraft alternatively

8

described this as a grassy area.  As Officer Kraft was attending
to the driver of the van, he did not see Plaintiff and Officer
Zacamy again until Plaintiff was handcuffed and being lifted up.
Thus, he was not able to testify as to what transpired during
Plaintiff's arrest.  He did not notice that Plaintiff had any
injuries.  (Motion, Ex. F, Dep. of Kraft.)

Finally, Christian Farley, the driver of the van, testified
at deposition regarding his recollection of the incident.  (Pl.
Response, Ex. H, Dep. of Farley.)  Mr. Farley described himself
as being kind of "in shock" as a result of the accident, but did
state that he thought Plaintiff was in the street, in the area
of the bus and his car, at the time he was arrested.  He
specifically noted that Plaintiff did not run up the road, he
did not see officers chasing him, and it did not look like
Plaintiff was resisting arrest.  (Dep. of Farley at 9-12, 18-
19.)  Beyond that, Mr. Farley could not provide details of the
circumstances of the arrest, including any struggle or punching
that may have occurred.

This Court has considered the Motion and the various
submissions of the parties and will decide the Motion on the
briefs, pursuant to Federal Rule of Civil Procedure 78(b).

## II.  <u>JURISDICTION</u>

This Court exercises subject matter jurisdiction over this
matter pursuant to 28 U.S.C. § 1331, in that the Complaint

alleges federal civil rights claims under 42 U.S.C. § 1983.  See
Max v. Republican Comm. of Lancaster County, 587 F.3d 198, 199
n.1 (3d Cir. 2009), cert. denied 560 U.S. 925 (2010).

### III.   SUMMARY JUDGMENT

A district court shall grant summary judgment, as to any
claim or defense, "if the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law."  Fed.R.Civ.P. 56(a).  Thus,
summary judgment is appropriate where the Court is satisfied
that "'the pleadings, depositions, answers to interrogatories,
and admissions on file, together with the affidavits, if any,
show that there is no genuine issue as to any material fact and
that the moving party is entitled to a judgment as a matter of
law.'"  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)
(citing Fed.R.Civ.P. 56).

An issue is "genuine" if it is supported by evidence such
that a reasonable jury could return a verdict in the nonmoving
party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
248 (1986).  A fact is "material" if, under the governing
substantive law, a dispute about the fact might affect the
outcome of the suit.  Id.   "By its very terms, this standard
provides that the mere existence of some alleged factual dispute
between the parties will not defeat an otherwise properly
supported motion for summary judgment; the requirement is that

there be no <u>genuine</u> issue of <u>material</u> fact."   <u>Id.</u> at 247-48

(emphasis in original).

Initially, the moving party bears the burden of

demonstrating the absence of a genuine issue of material fact.

<u>See</u> Fed.R.Civ.P. 56(c)(1), (4); <u>Celotex</u>, 477 U.S. at 323 ("[A]

party seeking summary judgment always bears the initial

responsibility of informing the district court of the basis for

its motion, and identifying those portions of 'the pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any,' which it believes

demonstrate the absence of a genuine issue of material fact."

(citation omitted)); <u>see also</u> <u>Singletary v. Pa. Dept. of Corr.</u>,

266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial

burden is on the summary judgment movant to show the absence of

a genuine issue of material fact, 'the burden on the moving

party may be discharged by "showing" - that is, pointing out to

the district court - that there is an absence of evidence to

support the nonmoving party's case' when the nonmoving party

bears the ultimate burden of proof." (citing <u>Celotex</u>, 477 U.S.

at 325)).

Once the moving party has met this burden, the nonmoving

party must identify, by affidavits or otherwise, specific facts

showing that there is a genuine issue for trial.  <u>Celotex</u>, 477

U.S. at 324.  "[T]he non-moving party, to prevail, must 'make a

11

showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  Cooper v. Sniezek, 418 F.App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322). Thus, to withstand a properly supported motion for summary judgment, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted).  Instead, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 249; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993) ("To raise a genuine issue of material fact, ... the opponent need not match, item for item, each piece of evidence proffered by the movant," but must "exceed[] the ' mere scintilla' threshold and ... offer[] a genuine issue of material fact.").

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  Marino v. Indus. Crating Co., 358

12

F.3d 241, 247 (3d Cir. 2004) (citing Anderson, 477 U.S. at 255).

In making this determination, however, the court may consider

materials in the record other than those cited by the parties.

Fed.R.Civ.P. 56(c)(3).

IV.   DISCUSSION

A.   The Excessive Force Claim Against Officer Zacamy

As noted above, Officer Zacamy argues that he is entitled

to summary judgment on grounds of qualified immunity, contending

that he used an objectively reasonable amount of force under the

circumstances.

> "The doctrine of qualified immunity protects
> government officials 'from liability for civil damages
> insofar as their conduct does not violate clearly
> established statutory or constitutional rights of
> which a reasonable person would have known.'"
> "Qualified immunity gives government officials
> breathing room to make reasonable but mistaken
> judgments," and "protects 'all but the plainly
> incompetent or those who knowingly violate the law.'"
> "We do not require a case directly on point" before
> concluding that the law is clearly established, "but
> existing precedent must have placed the statutory or
> constitutional question beyond debate."

Stanton v. Sims, 134 S.Ct. 3, 4-5 (2013) (citations omitted).

The Supreme Court has established a two-part analysis to

determine if qualified immunity is appropriate:  (1) whether the

official's conduct violated a constitutional or federal right;

and (2) whether the right at issue was "clearly established" at

the time of the defendant's alleged misconduct.  Pearson v.

Callahan, 555 U.S. 223, 232 (2009), citing Saucier v. Katz, 533

13

U.S. 194 (2001).  Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first."  Id. at 236.  It is the defendant's burden to establish entitlement to qualified immunity.  Kopec v. Tate, 361 F.3d 772 (3d Cir. 2004).

The Fourth Amendment to the United States Constitution provides that "The right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated."

"To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable."  Brower v. County of Inyo, 489 U.S. 593, 599 (1989), cited in Lamont v. New Jersey, 637 F.3d 177, 182-83 (3d Cir. 2011).  See also Graham v. Connor, 490 U.S. 386, 395 (1989) ("all claims that law enforcement officers have used excessive force--deadly or not-- in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard").

A seizure triggering Fourth Amendment protection occurs when a government actor "by means of physical force or show of authority, has in some way restrained the liberty of a citizen."  Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968).  Clearly, here, there

is no question that Plaintiff has adequately alleged that a seizure occurred.

To determine the reasonableness of a seizure, a court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." United States v. Place, 462 U.S. 696, 703 (1983), quoted in Graham v. Connor, 490 U.S. 386, 396 (1989) and Scott v. Harris, 550 U.S. 372, 383 (2007).  Proper application of this objective reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Graham v. Connor, 490 U.S. at 396; quoted in Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).  Other factors to be considered include "'the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.'"  Couden v. Duffy, 446 F.3d 483, 497 (3d Cir. 2006) (citations omitted).  Ultimately, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting

them, without regard to their underlying intent or motivation."
Graham, 490 U.S. at 397.

Officer Zacamy has failed to establish any entitlement to
qualified immunity on this record.  Clearly, the evidence
presented demonstrates that there remain significant issues in
dispute regarding both the level of threat Plaintiff presented,
where Plaintiff has testified that he complied with the first
order to stop and place his hands on his head, and the level of
force used to subdue him, which resulted in broken bones in both
Plaintiff's face and Officer Zacamy's hand.  When the facts are
viewed in the light most favorable to Plaintiff, however, a
reasonable jury could find that Officer Zacamy's actions were
unreasonable in light of the circumstances.  Cf., e.g., Green v.
New Jersey State Police, 246 F.App'x 158 (3d Cir. 2007)
(affirming the denial of summary judgment to officers who
arrested a driver for speeding and who were alleged, after he
was placed in the back seat of a police vehicle, to have grabbed
the arrestee's throat before asking him to exit the vehicle when
he became agitated, to have hit the arrestee twice on the head
with a flashlight, causing lacerations requiring stitches, and
to have pulled the arrestee from the car, thrown him to the
ground, and kicked him several times).

In addition, the law regarding the reasonable use of force
in effecting an arrest was well-established at the time of

16

Plaintiff's arrest.  See Couden, 446 F.3d at 497; Estate of Smith v. Marasco, 430 F.3d 140, at 149-50 (3d Cir. 2005).  Thus, if an officer applies force in an unreasonable manner under the factors set forth in Graham and its progeny, he is not entitled to qualified immunity.  See Estate of Smith, 430 F.3d at 150.

Accordingly, Officer Zacamy's motion for summary judgment with respect to the excessive force claim will be denied.

B.   The Claim Against Haddon Township

Plaintiff argues that Haddon Township had a custom of failing to review citizen complaints of excessive use of force, which led Officer Zacamy to believe that he could use excessive force without any consequences.

Local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior.  See Connick v. Thompson, 131 S.Ct. 1350, 1358-61 (2011); City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (holding that municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).

To establish municipal liability under § 1983, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990), quoted in Blanche Rd. Corp. v. Bensalem Twp., 57 F.3d 253, 269 n.16 (3d Cir.), cert. denied, 516 U.S. 915 (1995), and quoted in Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 126 (3d Cir. 2000). "A policy is made 'when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict.'" Natale, 318 F.3d at 584 (citations omitted). "A custom is an act 'that has not been formally approved by an appropriate decisionmaker,' but that is 'so widespread as to have the force of law.'" Id. (citations omitted). The Third Circuit has observed, "[t]here are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983:"

> The first is where the appropriate officer or entity
> promulgates a generally applicable statement of policy
> and the subsequent act complained of is simply an
> implementation of that policy.  The second occurs
> where no rule has been announced as policy but federal
> law has been violated by an act of the policymaker
> itself.  Finally, a policy or custom may also exist
> where the policymaker has failed to act affirmatively
> at all, [though] the need to take some action to

18

control the agents of the government is so obvious,
and the inadequacy of existing practice so likely to
result in the violation of constitutional rights, that
the policymaker can reasonably be said to have been
deliberately indifferent to the need.

Natale, 318 F.3d at 584 (footnote, citations, and quotation
marks omitted).  Thus, a plaintiff must demonstrate that,
through its deliberate conduct, the municipality was the moving
force behind the plaintiff's injury.   Monell, 436 U.S. at 689.

Here, in support of his claim against Haddon Township,
Plaintiff relies upon "The Attorney General's Policy on Use of
Force," a pamphlet distributed by Haddon Township to its
officers, as well as the Township's response to complaints of
excessive force.  The "Attorney General's Policy on Use of
Force," (Pl. Response, Docket Entry No. 91, Ex. N) appears to
consist of a series of printouts of bullet points, of the type
used in a slide presentation, which detail important concepts,
including that the use of force should never be considered
routine and that the degree of force employed should be only
that which is reasonably necessary, as well as the appropriate
use of force in various situations, e.g., shooting at a moving
vehicle, and the duty of an officer to take appropriate action
when another officer is using excessive force.  Among the slides
is one which states that an officer who uses force consistent
with the law and this policy will be strongly supported by the
law enforcement community in any review of the officer's

19

actions.  The "Attorney General's Policy on Use of Force"
further requires the preparation of a Use of Force Report any
time physical, mechanical, or deadly force is used.  The
pamphlet or slide presentation is neutral in tone, emphasizes
officers' duties and responsibilities under the law, and cannot
reasonably be construed as suggesting to officers that the use
of excessive force is condoned in any way.

Officer Zacamy's own Internal Affairs file reflects that a
single complaint of excessive force was filed against Officer
Zacamy prior to Plaintiff's arrest.  That incident involved
officers responding to a dispute at a laundromat and alleged
"pushing."  The incident was investigated by a Sgt. Anuw who
interviewed two other officers present at the time, but did not
interview the complainant or other persons present at the
laundromat, and concluded that the contact used in taking the
complainant into custody was appropriate.  One other claim of
"intimidation" was made against Officer Zacamy after Plaintiff's
arrest, in which Officer Zacamy was assisting in a property
removal and allegedly told a woman that she could be charged
with theft for keeping her nephew's laptop computer.  The
complainant later withdrew her complaint, stating that she
realized that Officer Zacamy was only trying to resolve the
situation.  In that instance, the investigating officer did
speak to the complainant.  (Pl. Response, Ex. L.)

Plaintiff also relies on Haddon Township's Internal Affairs Summary Report Forms (Pl. Response, Ex. Q, not filed), which purport to show that the four reports of excessive force filed between 2005 and 2007 were determined to be unfounded.  No other information regarding those complaints or the Township's investigation of them is provided.

While the single allegation of "pushing" in which Officer Zacamy was involved prior to Plaintiff's arrest may not have been investigated as thoroughly as it could have been, the use of force there was not alleged to have resulted in any injuries, and the other allegations of excessive force against Officer Zacamy and Haddon Township are so few and so vague, as they are presented here, that, even when viewed in the light most favorable to Plaintiff, the outcomes cannot be interpreted as representing a custom of condoning the excessive use of force. Cf. Jackson v. Hamilton Twp., Civil No. 10-3989, 2014 WL 1217662, *3-*4 (D.N.J. March 24, 2014) (granting summary judgment to police department where allegations regarding investigations of officers' use of force "'do [] not depict a 'sterile and shallow ... investigation' procedure.'" (citation omitted)).  Haddon Township's request for summary judgment as to the municipal liability claim will be granted.

V.   <u>CONCLUSION</u>

For the reasons set forth above, Defendant Officer Zacamy's request for summary judgment on the Fourth Amendment excessive-force claim will be denied, Haddon Township's request for summary judgment with respect to the municipal liability claim will be granted, and all other claims will be dismissed with prejudice.  An appropriate order follows.


At Camden, New Jersey              <u>    s/ Noel L. Hillman</u>
                                   Noel L. Hillman
                                   United States District Judge

Dated: September 19, 2014